This is a bill praying that the sheriff of the county of Essex be restrained from selling under judgment execution the lands mentioned in the bill until final hearing.
It appears that one Joseph Chiera obtained title to certain lands in Bloomfield, New Jersey. Subsequently, three judgments were recovered in the district court against Guiseppe Chiera, and docketed in the Essex county court of common pleas.
After these judgments were docketed Joseph Chiera executed a mortgage to the complainant for $15,000 covering the lands in question. The three judgments against Guiseppe Chiera were assigned to the defendant Calandra, who has issued executions and has directed the sheriff to sell, seeking thus to divest complainant of all interest under the mortgage. The foreclosure suit includes the holder of the judgments as a party defendant, asks that defendant be restrained, until final determination of the foreclosure suit, from proceeding on the executions against the property and only that property. The bill prays that the priorities of the mortgagee and the judgments as liens against the mortgaged premises be determined in said suit. Vice-Chancellor Backes issued a rule to show cause with temporary restraint, and the matter was argued before me on the return day.
The reason alleged for asking the injunction is that the judgments are not notice to the complainant, because they were entered and docketed under the name of Guiseppe Chiera, the record title being in the name of Joseph Chiera. The complainant is, it is contended, therefore, a bona fide holder of the mortgage for value and without notice, although they were docketed prior to the recording of his mortgage.
There is authority for this contention. In the case of Yucker
v. Morris, 85 N.J. Eq. 476, Vice-Chancellor Griffin held — *Page 612 
"I am inclined to the view that a court of law, on proceedings properly instituted, would set aside the judgment. But thejudgment stands of record in full force and effect against ThomasE. Morris, or T. Edward Morris, as against an innocentpurchaser. By our statute a judgment in the district court may be docketed in the court of common pleas, and, when so docketed, becomes a lien on lands, and the clerk is required to note thejudgment in a proper index. The object of this is to give notice to the world of the existence of the judgment and of its lien. Considering the law above set forth, would it be negligence on the part of a searcher to treat a judgment against Edward Morris as against Thomas E. Morris or T. Edward Morris? I think not. If the judgment, on a proper application, would be set aside in a court of law, by reason of the absence of the Christian name, or proper name of the party defendant, why should a searcher gofarther when he finds that the Christian or proper name of thedefendant in the judgment is not the Christian or proper name ofthe person against whom he is searching? To hold otherwise wouldgreatly increase the expense in, and render more hazardous, landtransactions, and be contrary to the existing law."
 In the case of Lembeck, c., Brewing Co. v. Barbi, 90 N.J. Eq. 373; affirmed, 91 N.J. Eq. 533, Vice-Chancellor Lewis held —
"A mortgage was made by Barbi, also known as Barboe. The title was in Borbely and a mortgage was made that way.
"I am therefore of the opinion that the mortgage of the building and loan association for $1,800 is entitled to priority of payment over the mortgage of the Lembeck Betz Eagle Brewing Company, because, at the time the building and loan association mortgage was given, the mortgage of the brewing company was not constructive notice, inasmuch as it was recorded in the names of the mortgagors in such form that a search in the real names ofthe owners would fail to disclose it. If the searcher is charged with the duty of searching for fictitious names, either in the chain of title or for encumbrances in order to locate instruments of record *Page 613 
affecting the premises involved, the recording system would be anullity, and the searcher would be helpless, because he has no means of determining what fictitious name may have been employed by a grantor or a mortgagor in a previous deed or encumbrance.
"An otherwise perfect chain of title search in the real namesof the parties, as they appear of record, would not be worth thepaper it was written on, because you could never tell whatoutstanding deeds or encumbrances might exist of record affecting the premises in fictitious names."
The defendant insists that the bill of complaint does not allege a cause of action cognizable in a court of equity. Counsel has called my attention to a long list of cases which he asserts support this proposition. I think he fails to grasp the exact purpose of this bill. It is not to attack the validity of the judgments, but merely to have the priorities of the liens on the property determined. Defendant can proceed against other property of Guiseppe Chiera, the restraint sought being only against the land under foreclosure, and that only until the priorities are determined. In other words, he admits the validity of the judgments. See Stratton v. Packer et al., 14 Atl. Rep. 587, and Hazelhurst v. Sea Isle City Co., 25 Atl. Rep. 201. In 19Rul. Cas. L. 400 § 179, it is stated:
"A rule may be deduced from the adjudged cases that a mortgagee may not enjoin a sale of the mortgaged premises under an execution on a claim subordinate to his mortgage where the sale cannot prejudice his rights, but if he, himself, is without fault, and the intended sale is in violation and disregard of his legal rights, he may procure an injunction."
I think the bill alleges a cause cognizable in equity.
Defendant further alleges that Calandra is not the proper or necessary party to the proceeding. Rule 6 of the court says:
"Any person may be made a defendant who either jointly, severally or in the alternative is alleged to have or claim an interest in the controversy, or in any part thereof adverse to the complainant, or whom it is necessary or proper to make a party for the complete determination or settlement of any question involved therein." *Page 614 
I cannot see how the priorities between mortgagee and judgments could possibly be determined unless the assignee of the judgments were in court. If he were not in court there would be nothing to prevent his proceeding to sell under the execution, and thus, possibly, make useless further progress in the suit commenced by this bill.
I will therefore advise a decree continuing the restraint prayed for until final hearing.