The bill is filed to restrain an execution sale on a judgment which the defendant recovered in the district court of the *Page 404 
city of Passaic and docketed in the county clerk's office. The judgment debtors as named in the county clerk's record are Virginia Gazella Paralla and John Paralla (first name fictitious, being unknown). The full name of the former is Edith Virginia Gazella Paralla and the correct name of the latter is Rocco Paralla. Two weeks after the docketing of the judgment, complainants, not knowing of the judgment, purchased from the judgment debtors for a valuable consideration lands in Passaic county. Before they took title, their attorney examined the records in the county clerk's office but did not discover the judgment. His failure to find it may be accounted for by the discrepancy in the Christian names; he was searching against Edith and Rocco, not Virginia and John. A few months after complainants took title, execution issued on the docketed judgment; the sheriff levied on complainants' lands and has advertised the sale of the property. This is the sale which the bill is filed to restrain.
The question which complainants seek to litigate is whether defendants' judgment is a lien on their land superior to their title. There are two reported decisions which seem to uphold the jurisdiction of this court to decide such a question and to enjoin the sale if complainants' title appears to be free from the judgment lien. Lewis v. Hall, 7 N.J. Eq. 107; Hodge'sExecutors v. Amerman, 40 N.J. Eq. 99. But the greater number of our cases hold to the contrary; among them are Freeman v.Elmendorf, 7 N.J. Eq. 475; affirmed, Ibid. 655; West Jersey andSeashore Railroad Co. v. Smith, 69 N.J. Eq. 429; Alpern v.Behrenburg, 77 N.J. Eq. 373. In the Freeman Case, Chief-Justice Green said: "It was suggested with truth upon the argument that permitting the sale to be made under the execution, will subject the complainants to the necessity of paying the execution, or subject them to the hazard of having the land sacrificed to a purchaser willing to speculate upon the hazard of a law suit. * * * And yet in such case equity ordinarily will not interfere, and for manifest reasons. In truth, a court of equity has no jurisdiction where the whole question involved is a question of legal title. If the sheriff is enjoined from selling *Page 405 
under the execution, there is no mode in which the question of title could be tried at law."
The other two cases last cited above were suits to quiet title in which the complainant, in order to preserve the status until final hearing, asked that the execution sale on the judgments held by defendant be stayed. In each case, such relief was denied. In the West Jersey and Seashore Railroad Company suit, Vice-Chancellor Garrison wrote: "The sole question is whether certain judgments are or are not valid liens against premises, title to which is claimed by complainant. If they are not liens, the sheriff's sale will do no harm to the complainant. If they are liens, the sale should not be enjoined. Whether they are or are not is a legal and not an equitable question." In the AlpernCase, Vice-Chancellor Stevenson, while indicating his disapproval of the rule, held that "the party in peaceable possession and claiming title is not allowed to have the status of the judgment fixed so that he may pay the same if it is found to be valid. He must either pay the judgment, whether an encumbrance on his property or not, or take the chances of his being able subsequently to maintain his title against what has ceased to be in form a mere encumbrance and has become in form a complete hostile title."
These cases disclosed a serious defect in our judicial system. The owner of land could not ascertain or enforce his rights in the court of chancery because the controversy was legal and not equitable; he could not proceed in a court of law because no form of action at law permitted an adjudication of the claims of the parties until after the lien of the judgment, if it was a lien, had been transformed into an absolute title. It was to remedy such situations and to provide a method whereby rights and liabilities might be conclusively ascertained in order that the parties could intelligently order their affairs, that the legislature enacted the Uniform Declaratory Judgments act. P.L.1924 p. 312. This statute authorizes courts "to declare rights, status and other legal relations whether or not further relief is or could be claimed." The court of chancery cannot, however, by *Page 406 
force of this statute declare that the defendants' judgment is or is not a lien on complainants' land, since this is a legal question. Paterson v. Currier, 98 N.J. Eq. 48. It appears likely that a law court would have jurisdiction of an action under the statute for a declaratory judgment of the respective rights of the parties. No suit of that character is now pending, but complainants should have the opportunity to bring one if they so desire. Pending the determination of such an action, the court of chancery would enjoin the sheriff's sale in order to preserve the status quo. Zimmer v. Dunlap, 99 N.J. Eq. 610. In that case, execution sales were restrained pending final hearing on a foreclosure bill on which the issue was joined whether the judgments were liens on the mortgaged premises. Injunctions to preserve the status quo until adjudication by a law court were considered by the chancellor in McCran v. Public ServiceRailway Co., 95 N.J. Eq. 22. The course here suggested will benefit not only complainants, but defendant; the declaratory judgment will be a sure guide to both parties. But the equity in complainants' property is little more than the amount due on defendants' judgment and by the time the legal action is ended, the equity may be insufficient to answer the judgment. If complainants choose to adopt the course above suggested, they will be required to give bond with sufficient surety for the payment of defendants' judgment unless complainants succeed at law.
Complainants may have two weeks to institute suit for a declaratory judgment at law and to file a bond and a supplement to their bill alleging the pendency of the law action. Defendants, of course, may answer the supplement. If nothing new is developed by the answer, further proceedings on the suit in this court will be stayed and the restraint against the sheriff's sale continued until the law court disposes of the matter. If complainants do not see fit to adopt this course, the bill of complaint will be dismissed. *Page 407